UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURT V. BRUSELOFF,

    Plaintiff/Counter-Defendant,

Case No. 06-CV-11190

vs.

HON. GEORGE CARAM STEEH

PUNITA LEATHERS, INC.,

    Defendant/Counter-Plaintiff.

_____/

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (# 25)

INTRODUCTION

    This is a six-count lawsuit, brought in federal court on the basis of diversity, filed by alleged sales representative Bert Bruseloff ("Bruseloff"), a citizen of Michigan, against Punita Leathers, Inc. ("Punita"), a Virginia corporation, in connection with Punita's sales of leather wallets to the Kmart Corporation, which later filed for bankruptcy, as well as other entities. Defendant has moved for dismissal of plaintiff's complaint. Because the court finds that plaintiff lacks standing to bring certain counts, defendant's motion will be GRANTED as to plaintiff's first three counts and a portion of plaintiff's fourth count. For the reasons given below, defendant's motion is DENIED IN PART as to Plaintiff's remaining claims.

BACKGROUND

Plaintiff Bert Bruseloff's claims stem in part from a one page letter agreement entered into on June 11, 2001 between Punita Leathers, Inc. and an entity called Birchcrest Marketing. That letter agreement stated Birchcrest Marketing's pleasure "to be working with Punita Leather towards establishing a business that is profitable, long lasting and enjoyable for many years to come." It also stated:

> To confirm our discussions, Birchcrest Marketing is retained to be Punita Leather's sales representative for the purpose of obtaining Kmart as a customer. Punita Leather will pay a commission on all sales to Kmart. Total commission of $0.50 will be paid per wallet. $0.25 is to be paid directly to Birchcrest Marketing, and the check is to be sent to our office. $0.25 is to be paid to the Bert Bruseloff Group, and the check is to be sent to their office. Commissions are payable upon your receipt of payment from Kmart.

June 11, 2001 Letter Agreement between Punita and Birchcrest Marketing (the "Agreement"). Plaintiff does not claim an affiliation with Birchcrest Marketing.

Plaintiff's complaint asserts that he served as a sales representative for Punita, and was tasked with creating a "'marketing and promotion package' which included generally, but not limited to, designing pallet pad displays, meeting with designers, designing packaging and engaging and/or introducing field sales representatives to approach the potential customers listed above." Second Amended Complaint, ¶ 14.

That complaint, filed August 1, 2006, further asserts that the purpose of the agreement quoted above was "for Plaintiff and Birchcrest to obtain the Kmart Corporation as a customer and/or purchaser of certain wallets produced and sold by the Defendant." Second Amended Complaint, ¶ 6. That pleading also states that "Plaintiff

secured, on behalf of Defendant, and in accordance with their Agreement, the sale 1,544,534 wallets for $1,544,534.00 to the Kmart Corporation (sic)." Id., ¶ 8.[1]

Although plaintiff concedes that the Kmart Corporation's financial difficulties delayed payment to Punita, he asserts that Punita was "eventually paid and/or compensated in full for the wallets provided to Kmart," Id. at ¶ 10, and alleges that defendant was required to pay him $0.25 for each wallet under the Agreement, or a total of $110,323 in commissions. Id. at ¶ 9.[2] Punita, ultimately, assigned its claim in the K-Mart bankruptcy to a corporation called AMROC for instantaneous payment of approximately $210,000.

The affidavit of Punita's principal, Harsh Sethi, which is attached to defendant's motion, states concerning Kmart, that "[d]ue to the bankruptcy filed by K-Mart Punita was not paid the agreed upon purchase price for the wallets. Instead, Punita received approximately $.15 on the dollar for a total recovery of $210,000, and a loss of $1,270,500 to Punita." This evidence does not state whether Punita was paid anything by K-Mart prior to the bankruptcy filing. It appears that Sethi is referring to the amount he received when he assigned his bankruptcy claim to a corporation called AMROC for approximately $210,000.

In his response brief, plaintiff indicates that he assigned any and all payments from Punita (with the exception of convenience store accounts) to an entity called "BJK

---

[1] Page eight of plaintiff's response brief, however, states that Punita sold "approximately 423,000 wallets to K-Mart for a total sale price of approximately $1.5 million dollars."

[2] The court notes that a commission of $.25 on 1,544,534 wallets would actually result in many times that amount.

Enterprises" as of November 2001.  However, in maintaining a claim to commissions under both the written and some vague oral agreements allegedly struck between the parties, concerning which there is no clear evidence, plaintiff's complaint also asserts that Punita has used "essentially all aspects of the 'marketing and promotion package' developed by the Plaintiff in subsequent marketing campaigns to Kroger and other entities of which significant sales were realized by the defendant."  Id. at ¶ 19.

Plaintiff's six-count complaint first asserts a breach of the Michigan Commission Sales Representative Act, Mich. Comp. Laws Ann. § 600.2961, and alleges entitlement to damages in the amount of $110,323, plus "an additional award of two times that amount of unpaid commissions up to $100,000.00 for a total award of $210,323.00 plus attorneys fees, costs and interest as provided by statute."  He next asserts breach of contract under the Agreement.  His third count asserts an alternative third party beneficiary claim pursuant to Mich. Comp. Laws Ann. § 600.405.  In that count, he states he was an "intended third party beneficiary and as such has the same right to enforce any promises of the Defendant pursuant to the contract as if this promise or obligation had been made directly from Plaintiff to Defendant."  The fourth count, entitled "Quantum Meruit," asserts the entitlement of plaintiff to damages in excess of $75,000, for services for which he was not compensated and by which, he asserts, defendant was unjustly enriched.

Plaintiff also includes a fifth count brought under the Michigan Sales Representative Act and a sixth count, claiming breach of contract as to "Kroger and other entities," regarding "expressed oral contracts" made in 1998 and 2002.

Defendant has moved to dismiss Counts I-IV of plaintiff's complaint, or in the alternative for summary judgment as to each of those counts. The initial motion does not make mention of Counts V and VI. The court's consideration of this motion and subsequent briefing is set forth below.

## STANDARD

### Motion to Dismiss

When this court considers a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "well-pleaded facts" contained in a complaint must be accepted as true. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Any ambiguities in the pleadings must be resolved in the pleader's favor. Jackson v. Richards Medical Co., 961 F.2d 575, 577 (6th Cir. 1992). However, the court need not accept as true legal conclusions or unwarranted factual inferences. Morgan, 829 F.2d at 12.

Once the court has "constru[ed] the complaint in the light most favorable to the plaintiff ... [it] determine[s] whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.1998) (citation omitted). A district court properly grants the motion to dismiss when there is no set of facts contained in the complaint that would allow recovery. Carter by Carter v. Cornwall, 983 F.2d 52, 54 (6th Cir. 1993).

### Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences therefrom must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere

allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## DISCUSSION

1. Bruseloff's Assignment of Rights under the Agreement

Oral argument on this motion focused in large part on a position taken by defendant it its reply brief, concerning an assignment of interest made by plaintiff in 2001, and whether this means plaintiff lacks standing to pursue this litigation. The court gave the parties leave to file supplemental briefs on this issue, among others, following the hearing.

The assignment is in the form of a one page fax from Bert Bruseloff to Punita Leathers, with a stamped date of November 6, 2001, stating:

> Dear Harsh:
>
> Please accept this fax as confirmation, that I Bert Bruseloff and president of Impusle (sic) Promotion Inc. am assigning commissions that I am entitled to, too (sic) be paid to BJK Enterprise Inc. Attention Mr. Irving August, 31000 Northwestern Hwy. Suite 220, Farmington Hills, MI 48334. BJK Enterprise are professionals that provide me with business advice.
>
> Above commissions are related to Discount, Supermarket and Drug Store Chains. They do not include Convenience store accounts.
>
> This is in effect for all sales for K Mart, Rally's and future sales for 2001-2002.
>
> Sincerely,
> /s/
> Bert Bruseloff
>
> cc: Jerry Salan, Irv August, Nate Korash

On December 11, 2006, the day before oral argument in this matter, plaintiff faxed a "revocation" of the above assignment to Punita Leathers. That document was addressed to Harsh Sethi, and stated:

Dear Mr. Sethi:

    Please allow this correspondence to serve as notification that I, Bert Bruseloff, revoke the Assignment of my commissions to BJK Enterprises, Inc., dated November 6, 2001. Please forward all commissions due and payable to my office address:

Bert Bruseloff
6338 Lambert Street
Detroit, MI 48211

Thank you.

Very truly yours,
/s/
Bert Bruseloff

Defendant asserts that plaintiff's assignment to BJK Enterprises means that he is not the real party in interest in this litigation, as his assignment of commissions for Punita wallet sales was effective as of November 6, 2001, covered commissions due for all sales to Kmart and Kroger, and could not be unilaterally revoked. This is disputed by plaintiff, who argues that he successfully revoked what was a "gratuitous assignment" to BJK, and thus is "currently the real party in interest." Furthermore, plaintiff asserts that he is the real party in interest with respect to any and all commissions earned after the 2001-2002 time frame referenced in the assignment.

The court finds that the language of the assignment document itself, stating "BJK Enterprise are professionals that provide me with business advice," reflects the consideration given for the assignment of commissions from plaintiff to BJK. Plaintiff's

unsupported assertions that the assignment was "gratuitous," and that BJK only "held" plaintiff's money, do not convince the court otherwise. Therefore, the court is convinced by defendant's argument, citing Georgia case law and the Michigan case of <u>Burkhardt v. Bailey</u>, 260 Mich. App. 636 (2004)("...the assignor must manifest an intent to transfer and must not retain any control or any power of revocation"), that the assignment could not be unilaterally revoked.

As plaintiff points out, however, the assignment document arguably limited the assignment to a period ending December 31, 2002. Construing the evidence in a light most favorable to the plaintiff, then, claims arising after this time period will not be barred by the assignment on a motion for summary judgment.

For this reason, the court is persuaded by defendant's argument that plaintiff lacks standing to pursue claims concerning commissions allegedly due as a result of wallet sales to Kmart, as plaintiff has not pointed to any evidence of Kmart sales beyond that time period. Thus, defendant's motion will be granted as to Counts I, II, and III on this basis. The court will address the claims concerning sales to Kroger and other entities below.

2. Alternative Arguments for Dismissal of Counts I and II

The court will briefly address the arguments originally presented by defendant for dismissal of counts I and II.[3] Defendant's original argument for dismissal of Count I,

---

[3] Defendant has also presented an alternative argument for dismissal of plaintiff's third count, asserting a third party beneficiary claim, stating that while the Bert Bruseloff Group could arguably be considered a third party beneficiary to the Birchcrest Marketing Agreement, the same cannot be said for Bert Bruseloff the individual, as it was the "Bert Bruseloff Group" that was named in the agreement. Plaintiff points out that payments were made to Bert Bruseloff, the individual, and asserts that all involved recognized that the

9

which asserts a breach of the Michigan Commission Sales Representative Act, Mich. Comp. Laws Ann. § 600.2961, is that the claim should be dismissed as Bruseloff cannot fall within Mich. Comp. Laws Ann. § 600.2961(1)(e), which defines "sales representative." That section of the Sales Representatives' Commissions Act (SRCA) states the following:

> (e) "Sales representative" means a person who contracts with or is employed by a principal for the solicitation of orders or sale of goods and is paid, in whole or in part, by commission. Sales representative does not include a person who places an order or sale for a product on his or her own account for resale by that sales representative.

Mich. Comp. Laws Ann. § 600.2961(e).

The court is also convinced dismissal is appropriate under this alternative argument made by defendant. Plaintiff's Second Amended Complaint asserts entitlement to commissions under the SRCA *purely* on the basis of the Agreement referred to above. However, that Agreement's only mention of Mr. Bruseloff is the line stating that $0.25 for each wallet would be sent to the "Bert Bruseloff Group." Despite Bruseloff's assertion that "[a]ll parties understood that Bert Bruseloff was acting in an individual capacity as a sales representative[4]," this provision of the Agreement, alone,

---

agreement was made for the benefit of Bert Bruseloff, the individual. The court would not grant dismissal of this claim on this basis, but finds it unnecessary to address in depth as the count has not survived defendant's assignment argument, addressed above.

[4] Bruseloff asserts that he "entered into the contract" as "The Bert Bruseloff Group," and states that because he never actually formed "The Bert Bruseloff Group," he himself was a party to the Agreement. However, as noted above, neither Bert Bruseloff nor The Bert Bruseloff Group was a party to the Agreement.

2:06-cv-11190-GCS-MKM   Doc # 33   Filed 03/21/07   Pg 11 of 15   Pg ID 225

cannot be read to give Bruseloff the status of sales representative sufficient for a claim under the SRCA.

Defendant's alternative argument concerning Count II is that Bruseloff has failed to state a claim for breach of contract. Defendant cites to Michigan case law of <u>Gianotta v. Holderid</u>, 143 Mich. App. 249, 252 (1985) for the basic proposition that a person who is not a party to a contract lacks standing to pursue a claim for breach of the contract. The court agrees. Bruseloff cannot pursue a breach of contract claim where he was not a party to the Agreement, no matter his argument that the Agreement "mentions Bert Bruseloff Group instead of Bert Bruseloff in his individual capacity." He makes the confusing assertion that the Bert Bruseloff Group, which was never formed, should be treated as the individual Bert Bruseloff. However, he does not refute the fact that a statement about payment to The Bruseloff Group does not make either Bert Bruseloff or The Bruseloff Group a party to the Agreement.[5] Plaintiff's proper claim alleging a breach of the agreement here is as a third party beneficiary, which he stated in Count III. Dismissal of Count II on this alternative basis is also appropriate.

### 3. Quantum Meruit Claim

This four paragraph count states:

40. Plaintiff incorporates Paragraphs 1-39 as though fully set forth herein.

41. Defendant requested Plaintiff provide certain services to Defendant.

---

[5] Generally, under Michigan law, a third-party beneficiary of a contract who is "directly referred to in the contract" may make a claim for a breach of the contract. <u>Koenig v. South Haven</u>, 460 Mich. 667, 677 (1999). Plaintiff specifically pled a third-party beneficiary claim in Count III, which was addressed above and in footnote 2.

> 42. Plaintiff, pursuant to Defendant's request, provided these services to Defendant, incurring costs and expenses.
>
> 43. Defendant accepted the provision of these services provided by Plaintiff without having paid for those services and has been unjustly enriched thereby.
>
> WHEREFORE, Plaintiff respectfully requests this Honorable Court enter Judgment against Defendant in amount in excess of $75,000.00 plus costs, interest and attorney fees.

Second Amended Complaint, Count IV.

Defendant's argument for dismissal of this count asserts that Bruseloff bases his alleged quantum meruit damages on the Agreement. Defendant then states that Punita has received no benefit from its wallet sales to Kmart, and that therefore a necessary element of a quantum meruit claim is lacking.[6] However, the count itself is quoted above, and the Agreement is not mentioned in that count. Moreover, the Second Amended Complaint makes mention, beginning with paragraph 13, of duties undertaken by plaintiff toward making sales of plaintiff's products to Kroger, "as well as other smaller supermarkets and convenience stores throughout the country." Second Amended Complaint, ¶ 13.

Although the responsive argument by plaintiff is not of great assistance to the court, as mentioned above, the quantum meruit claim is not limited by its terms to defendant's sales to Kmart. The assignment to BJK Enterprises, Inc., discussed above, disposes of claims for commissions on sales to Kmart, Rally's, "Discount, Supermarket and Drug Store Chains" from the date of plaintiff's assignment through 2002, but

---

[6] As discussed above, the court has found that plaintiff's assignment of commissions bars claims concerning commissions due on sales to Kmart, as plaintiff has come forward with no evidence to support a claim to such commissions due after December 31, 2002.

specifically excludes convenience store sales. As noted above, it also leaves open the issue of commissions due from the period after the year 2002. Although scant, plaintiff has pointed to certain evidence of a working relationship after that date, such as a letter he sent to Harsh Sethi on February 25, 2003, concerning orders from "Supervalue and Albertsons," and an (unsigned) affidavit of Alan Harvith concerning work as a sales representative for defendant. It does not appear to the court that either dismissal under a 12(b)(6) motion or judgment for defendant under a Rule 56 motion, at this juncture, is appropriate as to non-Kmart sales made after 2002.

Therefore, defendant's motion will be granted as to Count IV to the extent the claim seeks recovery for commissions on sales to Kmart and any other commissions due prior to January 1, 2003, but denied as to claims for commissions due on sales to convenience stores and non-Kmart sales after that date.

4. Counts V and VI

Defendant's initial motion was silent as to plaintiff's fifth and sixth counts. In its supplemental brief, defendant has argued for dismissal of these counts, asserting that plaintiff was not involved in non-Kmart sales of defendant's products, and has not pled he was the "procuring cause" of such sales, citing Roberts Assoc. Inc. v. Blazer Intern. Corp., 741 F. Supp 650 (E.D. Mich. 1990).

The court cannot dismiss these counts at this point in the litigation. Defendant's arguments for dismissal were presented in a supplemental brief, to which plaintiff has not had the opportunity to respond. Moreover, the argument that plaintiff had to *plead* that he was the procuring cause to survive plaintiff's motion does not convince the court that dismissal of these counts is appropriate. As stated in Clark Bros. Sales Co. v.

13

Dana Corp., 77 F. Supp 2d 837, 849 (E.D. Mich. 1999), discussing Michigan's landmark Reed case concerning the procuring cause doctrine:

> As this great weight of subsequent case law uniformly confirms, Reed does not require that the parties' express agreement as to the payment of commissions be supplanted by a procuring cause approach. Rather, the fair dealing principle set forth in Reed applies only where the parties have not addressed the subject of post-termination commissions, and seeks to ensure that the manufacturer does not unfairly benefit from the opportunistic termination of a sales representative after he has procured a sale but before the sale is consummated.

Id. The Roberts case cited by defendant states the same proposition: "[w]here the contract is silent, the agent is entitled to recover a commission on a sale...where it can be shown that his efforts were the "procuring cause." Roberts, 741 F.Supp at 652 (citing Reed, 352 Mich. 287, 295 (1958). As noted above, plaintiff's Second Amended Complaint asserts that he had an oral agreement to create a "marketing and promotion package," for the marketing and sales of defendant's wallets to both Kroger and "other smaller supermarkets and convenience stores throughout the country," in connection with which he would be paid certain commissions. Although it does not appear that plaintiff fits the definition of "Sales Representative" under the SRCA, this is not altogether clear, and has not been briefed.

Additionally, whether or not plaintiff might be due commissions on sales under another theory would require analysis of the agreement, the actions of the parties, the results of those actions, and any applicable defenses, among other facts and circumstances. The parties' unsupported arguments and conclusory statements do not give the court the information it needs to fully consider the motion as to these counts.

While the court is not convinced of the long term viability of these claims, for the reasons stated above, dismissal or entry of judgment at this juncture is not appropriate.

5.  Defendant's Counter-Claim

Upon request of the court, defendant outlined its counter-claim in its supplemental brief, describing its breach of fiduciary duty claim against plaintiff for representing another client, allegedly in conflict with his duties for defendant. While the court is not convinced that an independent basis for jurisdiction over these claims exists, as the amount in controversy appears to be less than the required $75,000, because it has not dismissed all of plaintiff's claims, it will not dismiss the counter-claim at this juncture.

## CONCLUSION

As set forth above, and for the reasons stated, defendant's motion to dismiss or for summary judgment is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.


Dated: March 21, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 21, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---